February 21, 2006

Mr. Paul Mallett, Executive Director
Commission on State Emergency
   Communications
333 Guadalupe Street, Suite 2-212
Austin, Texas 78701-3942

Opinion No. GA-0401

Re: Whether the Commission on State Emergency Communications or the Comptroller of Public Accounts has primary jurisdiction to determine in the context of a claim for a refund whether the 9-1-1 emergency service fee imposed on wireless telecommunications connections by Texas Health and Safety Code section 771.0711(a) is applicable to a service provider's specific service  (RQ-0370-GA)

Dear Mr. Mallett:

You ask whether the Commission on State Emergency Communications (the "Commission") or the Comptroller of Public Accounts (the "Comptroller") has primary jurisdiction to determine in the context of a claim for a refund whether a 9-1-1 emergency service fee imposed on wireless telecommunications connections by Texas Health and Safety Code section 771.0711(a) applies to a service provider's specific service.[1]

A "9-1-1 service" is a telecommunications service that enables a user of the public telephone system "to reach a public safety answering point by dialing the digits 9-1-1." TEX. HEALTH & SAFETY CODE ANN. § 771.001(6) (Vernon 2003). Service is generally provided by local service districts, which may participate in 9-1-1 service plans developed by regional planning commissions. *Id.* §§ 771.056-.058 (Vernon 2003), 772.105-.110 (Vernon Supp. 2005), 772.210-.310 (Vernon 2003 & Supp. 2005). The Commission administers the implementation of statewide 9-1-1 service. *Id.* § 771.051(a)(1) (Vernon 2003).

In the subchapter of the code concerning the financing of state emergency communications, section 771.0711(a) states that the Commission shall impose a fee on each "wireless telecommunications connection," commonly known as a cell phone. *See id.* § 771.0711(a) (located in chapter 771, subchapter D); *see also id.* § 771.001(13) (definition of "wireless telecommunications

---

[1]Letter from Mr. Paul Mallett, Executive Director, Commission on State Emergency Communications, to Honorable Greg Abbott, Attorney General of Texas (Aug. 3, 2005) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

connection"); Request Letter, *supra* note 1, at 2.[2] The fee is statutorily established at 50 cents per month per connection. TEX. HEALTH & SAFETY CODE ANN. § 771.0711(b) (Vernon 2003). A "wireless service provider" must bill the fee to subscribers, receive payment, and remit amounts so collected to the Comptroller, who deposits the money to the credit of the 9-1-1 services fee account. *Id.* §§ 771.0711(b), .073(a).[3] The Commission administers the distribution of money appropriated to the Commission from the 9-1-1 service fee. *Id.* §§ 771.056(d), .071(f), .0711(c), .078. Money from fees collected under section 771.0711 "may be used only for services related to 9-1-1 services." *Id.* § 771.0711(c).

Your question is prompted by a wireless service provider's claim for a refund, filed with both the Commission and the Comptroller. Request Letter, *supra* note 1, at 1. The provider contends that it is not subject to section 771.0711's requirements because the provider's wireless services are offered on a prepaid basis. *Id.* You clarify that the Commission does not seek an opinion about the applicability of the statute to the prepaid service provider. Rather, your specific question is "whether the Commission or the Comptroller has primary jurisdiction to determine whether the 9-1-1 emergency service fee imposed on wireless telecommunications connections by Texas Health and Safety Code Section 771.0711(a) is applicable to a specific service provided by a service provider." *Id.* at 3; TEX. HEALTH & SAFETY CODE ANN. § 771.0711 (Vernon 2003).

Your question is essentially a matter of statutory construction—whether the legislature intended the Commission or the Comptroller to decide, in the first instance, the applicability of the emergency service fee on wireless telecommunications connections to a specific service, thereby obligating the service provider to bill, receive, and remit the fee to the Comptroller under section

---

[2]The Commission is also authorized to impose fees "on each local exchange access line or equivalent." TEX. HEALTH & SAFETY CODE ANN. § 771.071(a) (Vernon 2003).

[3]"Wireless service provider" is defined as:

> a provider of commercial mobile service under Section 332(d), Federal Telecommunications Act of 1996 (47 U.S.C. Section 151 et seq.), Federal Communications Commission rules, and the Omnibus Budget Reconciliation Act of 1993 (Pub. L. No. 103-66), and includes a provider of wireless two-way communication service, radio-telephone communications related to cellular telephone service, network radio access lines or the equivalent, and personal communication service. The term does not include a provider of:
>
> (A) a service whose users do not have access to 9-1-1 service;
>
> (B) a communication channel used only for data transmission;
>
> (C) a wireless roaming service or other nonlocal radio access line service; or
>
> (D) a private telecommunications service.

*Id.* § 771.001(12).

771.0711. Consequently, we review section 771.0711's allocation of responsibility between the Commission and the Comptroller.[4]

Section 771.051 begins with a clear statement about the Commission's role under the chapter: "The commission is the state's authority on emergency communications." TEX. HEALTH & SAFETY CODE ANN. § 771.051(a) (Vernon 2003). The Commission has the duty to "administer the implementation of statewide 9-1-1 service." Id. § 771.051(a)(1). This duty requires the Commission to oversee or coordinate the efforts of a complex amalgam of local emergency communication districts of various types, regional planning commissions, local exchange providers, intrastate long distance providers, wireless service providers, and others. See, e.g., id. §§ 771.001(3)-(5), (10), (12), .051(a)(1)-(10), .055-.058 (Vernon 2003), 772.101-.455 (Vernon 2003 & Supp. 2005). A major feature of the Commission's duties is its relation to regional planning commissions. The Commission must enter into contracts with the regional planning commissions to provide 9-1-1 service, assist them in the establishment of such service, develop performance standards for equipment and operations that regional plans are to follow, and review and approve or disapprove regional plans. Id. §§ 771.051(a)(2), (3), .056 (Vernon 2003).

Concerning the financing of state emergency communications, the Commission is authorized to impose a 9-1-1 emergency service fee on each "local exchange access line [sometimes referred to as a wire line or land line] or equivalent local exchange access line," id. § 771.071(a), and on each wireless telecommunications connection. Id. § 771.0711(a). The Commission is required to determine by rulemaking what constitutes a local exchange access line and an equivalent local exchange access line, reviewing its definition annually in light of changing circumstances such as technological development. Id. § 771.063(a)-(c). The Commission may set the fee, not to exceed 50 cents a month per line, in different amounts in different regions based on costs in the region. Id. § 771.071(b)-(c). Also, the Commission must impose an equalization surcharge on all intrastate long-distance service customers. Id. § 771.072(a). Local exchange service providers and intrastate long-distance service providers must collect the respective fees and remit them to the Comptroller in a manner similar to that required by section 771.0711 concerning wireless service providers. Id. § 771.071(e). However, for all fees and surcharges under sections 771.071, 771.0711, and 771.072, the Commission may establish payment schedules and minimum thresholds. Id. § 771.073(f).

The Commission must allocate fees collected under sections 771.071 and 771.0711 to each region according to statutorily specified formulas. Id. § 771.078(b)(1)-(2). Additionally, the Commission may allocate remaining funds to a region in an "amount that the commission considers appropriate to operate 9-1-1 service in the region according to the [region's] plan and contracts" with the Commission. Id. § 771.056(d). Specifically with respect to the wireless telecommunications

---

[4]The analogous "primary jurisdiction doctrine" is a judicially-created doctrine that decides whether a court should abate a proceeding before it to allow an agency to make the initial determinations in a dispute when the court and the agency have concurrent jurisdiction. See Subaru of Am., Inc. v. David McDavid Nissan, Inc., 84 S.W.3d 212, 221 (Tex. 2002). Also, as between agencies, if an agency has "primary and plenary jurisdiction" over a regulated industry, generally "[o]ther state agencies should recognize the validity of the orders of the primary agency." Bullock v. Shell Pipeline Corp., 671 S.W.2d 715, 719 (Tex. App.–Austin 1984, writ ref'd n.r.e.).

connection fee, section 771.0711 states that the fees "may be used only for services related to 9-1-1 services." *Id.* § 771.0711(c). That section also requires the Commission or a municipal emergency services district or a chapter 772 emergency services district to reimburse a wireless service provider according to state law "for reasonable expenses for network facilities, including equipment, installation, maintenance, and associated implementation costs." *Id.* § 771.0711(g).

As originally enacted, section 771.0711 required the Commission to receive the fee from wireless telecommunication providers and authorized the Commission to establish collection procedures. *See* Act of May 23, 1997, 75th Leg., R.S., ch. 1246, § 2, 1997 Tex. Gen. Laws 4720, 4720-21. Accordingly, the Commission promulgated rules for collection procedures and contested case hearings in title 1, sections 253.1-.31 of the Texas Administrative Code. *See* 22 Tex. Reg. 9786 (1997), *adopted* 23 Tex. Reg. 1540 (1998) (codified at 1 TEX. ADMIN. CODE §§ 253.1-.31); 28 Tex. Reg. 3666 (2003) (repeal of 1 TEX. ADMIN. CODE §§ 253.1-.31), *adopted* 28 Tex. Reg. 4885 (2003) (Comm'n on State Emergency Communications). However, in 1999 the legislature shifted authority for collecting past due fees from the Commission to the Comptroller. Act of May 30, 1999, 76th Leg., R.S., ch. 1405, § 37, 1999 Tex. Gen. Laws 4739, 4752; *see generally* Tex. Att'y Gen. Op. No. JC-0284 (2004). Further, in 2001 the legislature amended section 771.0711 to require service providers to pay fees collected from subscribers to the Comptroller instead of to the Commission. Act of May 26, 2001, 77th Leg., R.S., ch. 1158, § 81, 2001 Tex. Gen. Laws 2570, 2612. According to the bill analysis for the bill as enrolled, the purpose of the 2001 legislation was to "streamline and enhance the [Comptroller's] administration of the state's fiscal matters." HOUSE COMM. ON WAYS & MEANS, BILL ANALYSIS, Tex. H. B. 2914, 77th Leg., R.S. (2001).

As a result of these changes to chapter 771, the Comptroller has a number of fiscal responsibilities under chapter 771. The Comptroller must receive the fees remitted by the wireless telecommunications provider and deposit them to the credit of the 9-1-1 services fee account. TEX. HEALTH & SAFETY CODE ANN. § 771.0711(b) (Vernon 2003). At the Comptroller's discretion or upon the Commission's notification of irregularities concerning a provider, the Comptroller may conduct an audit of a service provider, which must include an audit of "collections and disbursements to determine if the provider is complying with [chapter 771]." *Id.* § 771.076(a)-(b). Under section 771.077(a), the Comptroller "may establish collection procedures to collect past due amounts . . . from a service provider" that fails to deliver required fees. *Id.* § 771.077(a).[5] That section further states that "Subtitles A and B, Title 2, Tax Code, apply to the administration and collection of amounts by the comptroller under this subchapter." *Id.* § 771.077(a).

Title 2, subtitle B, chapter 111 of the Tax Code concerns enforcement and collection. TEX. TAX CODE ANN. §§ 111.001-.353 (Vernon 2001 & Supp. 2005). Section 111.104 permits a refund "[i]f the comptroller finds that an amount of tax, penalty, or interest has been unlawfully or erroneously collected." *Id.* § 111.104(a) (Vernon Supp. 2005). The Comptroller may grant or deny such a claim after an informal review or render a decision after a hearing according to procedures prescribed by the Comptroller. *Id.* §§ 111.1042(a), .105(a) (Vernon 2001 & Supp. 2005). A person

---

[5]Additionally, the Comptroller may establish procedures for collecting past due fees directly from individual subscribers. TEX. HEALTH & SAFETY CODE ANN. §§ 771.0711(f), .073(c) (Vernon 2003).

dissatisfied with the decision after the administrative hearing may, in appropriate circumstances and following proper procedure, sue for the refund in court. *Id.* § 112.151(a) (Vernon 2001).

No statute addresses how to resolve or who should resolve a wireless telecommunications service provider's contention that it provides a service that is not subject to the fee in section 771.0711(a). You do not elaborate about the provider's contention, other than to say that it was raised in connection with a claim for a refund and based on the fact that the services were provided on a prepaid basis. Request Letter, *supra* note 1, at 1. We assume the question involves mixed questions of statutory construction and fact requiring a degree of expertise concerning emergency communications.

Administrative agencies have only "those powers the law confers upon them in clear and express statutory language and those reasonably necessary to fulfill a function or perform a duty that the Legislature has expressly placed with the agency." *In re Entergy Corp.*, 142 S.W.3d 316, 322 (Tex. 2004). The Commission's overriding function in chapter 771 is to administer the implementation of statewide 9-1-1 service. *See* TEX. HEALTH & SAFETY CODE ANN. § 771.051(a)(1) (Vernon 2003). The intent to centralize the state's emergency communications expertise in the Commission is manifest in the direct statement that the "commission is the state's authority on emergency communications." *Id.* § 771.051(a). The Commission is expressly required to impose the fee on wireless telecommunications connections. *Id.* § 771.0711(a). From the imposition of the fee flows the providers' duties to bill, receive, and remit the fee. *Id.* §§ 771.0711(a)-(b), .073(a). The Commission's authority to resolve a claim about the applicability of section 771.0711(a) to a wireless telecommunications connection based on the nature of the provider's service is therefore clearly within the Commission's purview.

On the other hand, the Commission's authority to order a refund is extremely limited. *See id.* § 771.073(g) (prohibiting a recovery of fees erroneously billed and remitted to the Commission except in limited circumstances). The Commission does not appear to have the authority to grant the relief requested under the circumstances presented. *See* Request Letter, *supra* note 1, at 1. Under chapter 771 of the Health and Safety Code and section 111.104 of the Tax Code, the authority to order such a refund lies with the Comptroller. *See* TEX. HEALTH & SAFETY CODE ANN. § 771.077(a) (Vernon 2003); TEX. TAX CODE ANN. § 111.104(a) (Vernon Supp. 2005). The legislature transferred the Commission's collection authority to the Comptroller to maximize efficiency in collecting the fees. *See* HOUSE COMM. ON WAYS & MEANS, BILL ANALYSIS, Tex. H. B. 2914, 77th Leg., R.S. (2001). The legislature did not vest the Comptroller with authority to impose the fee on wireless telecommunications connections, however. *See* TEX. HEALTH & SAFETY CODE ANN. § 771.0711(a) (Vernon 2003). Nor do we discern in chapter 771 the intent for the Comptroller to duplicate the expertise of the Commission in matters concerning the implementation of statewide 9-1-1 services.[6]

---

[6]For this reason, we believe that a court would give deference to the Commission's determinations about emergency communications that it likely would not afford to decisions by the Comptroller about the same issues. *See City of Corpus Christi v. Pub. Util. Comm'n*, 51 S.W.3d 231, 261 n.143 (Tex. 2001) (concerning deference given to construction of a statute by an agency charged with its administration); *Buddy Gregg Motor Homes, Inc. v. Motor Vehicle Bd. of Tex. Dep't of Transp.*, 156 S.W.3d 91, 102 (Tex. App.–Austin 2004, pet. denied) (stating that a court may afford less deference to an agency's determination in a matter outside of its expertise).

Consequently, the Comptroller does not have the authority to decide in the first instance whether the fee in section 771.0711(a) applies to a wireless telecommunications connection based on the nature of the wireless service provider's particular service.

In short, the Commission has the authority to decide the applicability of section 771.0711(a) to a particular service offered by a wireless service provider, but not the authority to grant the relief requested; the Comptroller may grant a refund but does not have the authority to resolve the issue in the first instance. Nevertheless, chapter 771 as a whole reflects an intent that the Commission and the Comptroller cooperate in the administration of fee payment and collection. The Comptroller is authorized to establish collection procedures generally and particularly to "establish procedures to be used by the commission to notify the comptroller of a service provider's . . . failure to timely deliver the fees or surcharges." *See id.* § 771.077(a)-(b). A claim for a refund must be filed with the Comptroller according to that office's rules and the Tax Code, but if the claim is based on the applicability of section 771.0711(a) to a wireless telecommunications connection due to the nature of the provider's service, the Comptroller should abate the proceeding to allow the Commission to determine the issues singularly within its expertise.

## S U M M A R Y

The Commission on State Emergency Communications, not the Comptroller of Public Accounts, has authority to determine whether section 771.0711(a) of the Texas Health and Safety Code, imposing a 9-1-1 emergency service fee on wireless telecommunications connections, applies to a wireless service provider's specific service. The Comptroller, not the Commission, has authority to order a refund of fees collected under section 771.0711. A claim for a refund of the fee imposed under that section must be filed with the Comptroller, but if the claim presents issues particularly within the Commission's expertise, the Comptroller should abate the administrative proceeding to allow the Commission to make the initial determination of those issues.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

ELLEN L. WITT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

William A. Hill
Assistant Attorney General, Opinion Committee